Dore, J.
(dissenting). The People proved beyond any reasonable doubt that the eleven-year-old boy, Stanley Balaban, was killed by defendant’s dogs, that defendant knew and should have known the dogs were vicious, and willfully allowed them to be at large, unleashed and unmuzzled in an area used by the public adjacent to his houseboat. Indeed, that area was dedicated at the time in question to public streets, mapped but not yet laid out.
As there were no eyewitnesses to the killing, circumstantial evidence was the only possible proof both as to the killing and also as to the boy’s taking “ all the precautions, which the circumstances permitted, to avoid the animal[s] ” (Penal Law, § 1052). (Italics supplied.)
The following are not inferences but objective facts established by credible evidence that the jury had the right to accept and obviously did accept as proved to their satisfaction. Indeed as to many of such facts there is no contrary evidence in the record. Defendant’s dogs were frequently seen running loose unmuzzled and unleashed in the area in question around the houseboat. Repeated and ferocious attacks made without any provocation whatever, by these dogs on human beings in the area and elsewhere were testified to by numerous persons. Thus, Dr. Shindell, a veterinarian with thirty-two years experience in the handling of dogs, went to the houseboat to examine one of the dogs that had previously and without provocation attacked and bitten one Edna Royston at a dog show. Dr. Shindell avoided attack by the dogs only by reason of the strategy he employed as an expert. Theodore A. Cohen testified to an attack by one of the dogs while he was walking on Tory Avenue, nearby the area in question, in the company of his neighbors, Mr. and Mrs. Risbano. Later in September, 1946, he and Mr. and Mrs. Risbano went in a car to complain to defendant for again and again allowing his dogs to roam loose and unmuzzled. While twenty yards from the houseboat, he called for defendant. He testified: “ Then suddenly a mess of dogs poured out of an open doorway on the houseboat and down the gangway heading for us with teeth bared, lips drawn back and snapping and, well charging at us, attacking us at a terrific pace and, well, we were just cornered practically.”
■ Fortunately, he found a heavy mahogany cudgel and by that means succeeded in warding off the dogs’ attack until he and his companions could get into their car and shut the door. They *223 then required a couple of minutes to recuperate from their terrifying experience. On twenty different occasions this defendant visited the health department to have the dogs examined as a result of ten separate complaints that his dogs had bitten other dogs and human beings. Defendant knew of all these episodes. He so testified. At the scene of the boy’s death, the dogs attacked Patrolman Rissone armed with a night stick and a revolver. During the officer’s investigation, the dogs again and again attacked and bit him though he was clubbing them off with his night stick. All of them again came at him and during the attack he lost his night stick and was thrown to the ground. While lying on the ground all the dogs attacked him, one of the dogs leaping to his chest and making for his throat. He was rescued only by the timely arrival at that instant of two other policemen armed with night sticks and revolvers. Only by the use of the revolvers shooting one of the dogs and wounding another were two policemen able to repel the attacking dogs. Defendant admitted that the dogs that were shot were his dogs. The extent and type of the ante-mortem wounds found by the medical examiner on the boy’s body, are conclusive evidence of the extreme ferocity of the attack these dogs made on this boy. At the time of the attack, the boy was alone, clad only in his swimming trunks and without any weapon either of offense or defense. No outcry from the boy was heard although there were many persons including many young persons and lifeguards nearby at the swimming pool. The boy had not broken into any enclosed place; he was not a trespasser. The unleashed, unmuzzled and ferocious dogs were illegally invading the area.
The statute here in question significantly refers to all the precautions “ which the circumstances permitted ” (italics mine). The jury had the right to consider these and all other facts established in the record not merely seriatim but also in their relation to one another establishing a factual pattern from which the jury could properly conclude that this immature, unarmed boy, ignorant of the viciousness of the dogs-, was attacked by the dogs with such ferocity and suddenness that he, a child of tender age unassisted and unaided, was under the circumstances overcome by terror and fright and fell prone as his body was found, the helpless prey of defendant’s pack of vicious dogs.
In a comprehensive and correct charge, the Trial Judge properly submitted this issue and other issues to the jury and on all the facts established, the surrounding circumstances and fair *224 inferences therefrom, the jury had the right to convict and the judgment of conviction should be affirmed.
Accordingly, we dissent and vote to affirm the judgment appealed from.
Peck, P. J., and Van Voorhis, J., concur with Callahan, J.; Dore, J., dissents and votes to affirm in opinion in which Shientag, J., concurs.
Judgment reversed and the indictment dismissed.